UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

NO. _______________

| | | |
|---|---|---|
| JONATHAN GREAVES,<br>Plaintiff,<br><br>vs.<br><br>DONALD BROWN II, individually and in his official capacity as Sheriff of Catawba County, JOHN DOE CORPORATION, in its capacity as Surety on the Official Bond of the Sheriff of Catawba County, and DOE DEPUTIES 1-10, individually and in their official capacities as deputies of the Catawba County Sheriff's Department, THURMAN WHISNANT, individually and in his official capacity as former Chief of Police of Hickory Police Department, CITY OF HICKORY; DOE OFFICERS 1-10, individually and in their official capacities as officers of the Hickory Police Department;<br>Defendants. | : | **COMPLAINT**<br>(Jury Trial Requested) |

COMES NOW the Plaintiff, JONATHAN GREAVES (hereinafter "Plaintiff"), by and through his undersigned attorney, alleging and saying as follows:

**NATURE OF THE CASE**

1. This is an action for money damages brought pursuant to 42 U.S.C. § § 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and under the statutes and common law of the State of North Carolina.
2. This is a civil action seeking compensatory and punitive damages pursuant to 42 U.S.C. § 1983, for Defendants' violation of Plaintiff's constitutional rights under the Fourth and

Fourteenth Amendments to the United States Constitution, specifically Plaintiff's right to be free from unreasonable seizure of his person. This action further asserts State common law claims arising from the same sequence of events and so relating to the federal claims as to be part of the same case or controversy, including claims for Assault and Battery, False Arrest and Imprisonment, Intentional and Negligent Infliction of Emotional Distress, and Negligent Hiring; Training; and/or Supervision.

3. It is alleged that Doe Deputies 1-10 of the Catawba County Sheriff's Department (hereinafter collectively referred to as "Doe Deputies") while acting under the color of law, violated Plaintiff's federal and constitutional rights by subjecting Plaintiff to unreasonable seizure and excessive use of force, assaulted and battered Plaintiff, falsely arrested and imprisoned Plaintiff, and intentionally or negligently inflicted emotional distress upon Plaintiff.

4. It is alleged that Doe Officers 1-10 of the Hickory Police Department (hereinafter referred collectively to as "Doe Officers") while acting under the color of law, violated Plaintiff's federal and constitutional rights by subjecting Plaintiff to unreasonable seizure and excessive use of force, assaulted and battered Plaintiff, falsely arrested and imprisoned Plaintiff, and intentionally or negligently inflicted emotional distress upon Plaintiff.

5. It is alleged that Defendant Sheriff Donald Brown II negligently hired, trained, and/or supervised the Doe Deputies, is vicariously liable for the Doe Deputies' actions, and violated Plaintiff's federal constitutional rights. In addition, Sheriff Brown is being sued in his official capacity under 42 U.S.C. § 1983 based on the *Monell* theory of liability because the Catawba County Sheriff's Department's policies and/or customs, which is approved and continually enforced by Sheriff Brown as the current acting Sheriff of Catawba

County, caused a deprivation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

6. It is alleged that Defendant Thurman Whisnant negligently hired, trained, and/or supervised the Doe Officers, is vicariously liable for the Doe Officers' actions, and violated Plaintiff's federal constitutional rights. In addition, Chief Whisnant is being sued in his official capacity under 42 U.S.C. § 1983 based on the *Monell* theory of liability because the City of Hickory Police Department's policies and/or customs, which is approved and continually enforced by Chief Whisnant as the former acting Hickory Police Chief, caused a deprivation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

**JURISDICTION & VENUE**

7. This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and North Carolina Law.
8. This Court has original jurisdiction over Plaintiff's constitutional and federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).
9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiff's federal claims.
10. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C §§ 1391(b)(1), (2), and (3), because most or all of the Defendants reside and may be found in the Western District of North Carolina, and a substantial part of the events giving rise to these claims occurred in the Western District of North Carolina.

**PARTIES**

11. The Plaintiff is a citizen and resident of Catawba County, North Carolina.

12. Upon information and belief, Sheriff Brown currently is and was the duly elected Sheriff of Catawba County, North Carolina, and was acting within the scope of his employment and under color of law at all times pertinent to the incidents complained of herein. Under the laws and policies of the State of North Carolina, and the policies and practices of Catawba County, Sheriff Brown is the chief law enforcement officer of Catawba County. As such, he is responsible for the operation of the Catawba County Sheriff's Department, as well as the hiring, supervision, training, and conduct of his officers and agents employed to work with the Sheriff's Department.

13. Sheriff Brown is being sued in his official capacity under N.C. Gen. Stat. § § 58-76-5 and 153A-435, and as *respondeat superior* for the actions of Doe Deputies. In addition, Sheriff Brown is being sued in his individual capacity under 42 U.S.C. § 1983 for his direct participation in authorizing the unconstitutional behavior described herein.

14. Upon information and belief, Sheriff Brown had an official bond in the amount of twenty-five thousand dollars ($25,000.00), as required by N.C. Gen. Stat. § 162-8, at the time of the incidents alleged herein.

15. Defendant John Doe Corporation is a fictitious name for the Surety on the official bond of Sheriff Brown, whose identity is presently unknown to Plaintiff. The true name of the corporation will be substituted for the fictitious name once the corporation's identity is learned.

16. Upon information and belief, Sheriff Brown is protected by the bond issued by John Doe Corporation, and John Doe Corporation is a corporation duly authorized to conduct business within the State of North Carolina. Pursuant to N.C. Gen. Stat. § 58-76-5, John

Doe Corporation is liable to Plaintiff for the neglect, misconduct, or misbehavior of Sheriff Brown in office.

17. Upon information and belief, Defendant Brown is also insured by one or more policies of liability insurance purchased pursuant to N.C. Gen. Stat. § 153A-435 or other applicable state law with respect to all acts and omissions complained of herein, or participates in a government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, or maintains a funded reserve, and to such extent, Defendant Brown has waived any official, sovereign, qualified or governmental immunity to which he might otherwise be entitled in his official capacity.

18. At all times mentioned, Sheriff Brown has waived immunity to the extent which he is covered by Catawba County's liability insurance. Furthermore, Sheriff Brown is obligated under state law to obtain and maintain said bond as Sheriff, and by obtaining said bond, waived sovereign and governmental immunity as to the claims alleged in this Complaint and to the extent of the Sheriff's bond.

19. Upon information and belief, Defendant Doe Deputies have been, or were, members of the Catawba County Sheriff's Department at all times pertinent to incidents complained of herein.

20. The Doe Deputies are sued in their individual and official capacities and are "persons" subject to suit within the meaning of 42 U.S.C. § 1983. The true names of the Doe Deputies are unknown to Plaintiff. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Additionally, discovery will reveal further information concerning the Doe Deputies, but Plaintiff is informed, believes, and therefore alleges, that the Doe Deputies have been domiciled in North Carolina at all relevant times.

21. Upon information and belief, at all times relevant to his action, the Doe Deputies were duly sworn law enforcement officers of the Catawba County Sheriff's Department and were acting under color of law and within the scope of their employment. Accordingly, Sheriff Brown is vicariously liable for the actions of the Doe Deputies under the doctrine of *respondeat superior* and the *Monell* theory of liability.

22. Upon information and belief, Thurman Whisnant was the formally appointed Chief of Police of the Hickory Police Department, and was acting within the scope of his employment and under color of law at all times pertinent to the incidents complained of herein. Under the laws and policies of the State of North Carolina, and the policies and practices of the City of Hickory, Thurman Whisnant was the chief law enforcement officer of the City of Hickory. As such, he is responsible for the operation of the Hickory Police Department, as well as the hiring, supervision, training, and conduct of his officers and agents employed to work with the Hickory Police Department.

23. Thurman Whisnant is being sued in his official capacity under N.C. Gen. Stat. § § 58-76-5 and 153A-435, and as *respondeat superior* for the actions of Doe Officers. In addition, Thurman Whisnant is being sued in his individual capacity under 42 U.S.C. § 1983 for his direct participation in authorizing the unconstitutional behavior described herein.

24. Defendant City of Hickory was and is a municipal corporation, located in Catawba County, North Carolina, organized under the laws of the State of North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. §§ 160A-11, 153A-10, vested with corporate powers and rights as specified in N.C. Gen. Stat. § 153A-11 including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, Defendant, City of Hickory, acted through its managers and policy makers, including the

former Chief of Police for the City of Hickory, Defendant Thurman Whisnant ("Chief Whisnant"), and other employees of the Hickory Police Department; and the acts, edicts and practices of said persons represent the official policies of Defendant City of Hickory.

25. At all times material herein, Defendant City of Hickory through its final policymakers in charge of law enforcement officers, engaged as a matter of policy or custom in inadequate screening, training and supervision of its police officers with deliberate indifference to the rights of the City's inhabitants with whom the police come into contact including Plaintiff, and deliberate indifference to the need for better screening, training and supervision and with knowledge that, as a result of the inadequacies of screening, training and supervision, it was highly predictable that police officers, including officers engaged in the performance of their duties, would engage in actions that could cause injury to individuals such as Plaintiff.

26. Upon information and belief, to the extent that any and/or all of the Defendants in this action are a municipal and/or governmental and/or city owned, operated and/or funded entity, or an employee or agent of any such entity, such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees and all officials acting in their official (any, if applicable, individual) capacities for civil liability and tort by the act of purchasing (or otherwise procuring, obtaining and/or having in place) liability insurance (or the functional and substantive equivalent thereof,

i.e., participation in a local governmental risk pool, retaining funds for civil liability, purchase of a surety bond, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

27. Upon information and belief, all Defendants, their officers, directors, employees and agents have waived governmental immunity under state and federal tort law, if any there be, by the purchase of insurance, against liability for negligent or intentional damage to person or property, or against absolute liability to person or property, or against absolute liability to person or property caused by an act or omission of the Defendants or of any of their officers, agents or employees when acting within the scope of their authority and in the course of their employment.

28. Subject matter jurisdiction is, therefore, appropriate and proper and any and all such governmental immunity and sovereign immunity is and has been fully waived pursuant to N.C. Gen. Stat. § 160A-485 and/or N.C. Gen. Stat. § 153A-435.

29. Upon information and belief, Defendant Doe Officers have been, or were, members of the Hickory Police Department at all times pertinent to incidents complained of herein.

30. The Doe Officers are sued in their individual and official capacities and are "persons" subject to suit within the meaning of 42 U.S.C. § 1983. The true names of the Doe Officers are unknown to Plaintiff. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Additionally, discovery will reveal further information concerning the Doe Officers, but Plaintiff is informed, believes, and therefore alleges, that the Doe Officers have been domiciled in North Carolina at all relevant times.

31. Upon information and belief, at all times relevant to his action, the Doe Officers were duly sworn law enforcement officers of the Hickory Police Department and were acting as agents of the City of Hickory, pursuant to and under color of statutes, regulations, customs, laws and usage of the City and the State of North Carolina. Accordingly, Thurman Whisnant is vicariously liable for the actions of the Doe Officers under the doctrine of *respondeat superior* and *Monell*.

**FACTS**

32. On or about May 9, 2020, Plaintiff was at his home consuming alcoholic beverages.
33. During his consumption, Plaintiff contacted the Veterans Affairs office to schedule an appointment to speak with someone due to reoccurring depression and suicidal thoughts.
34. Plaintiff, in his state of depression, made a comment about committing suicide. Plaintiff's wife, after hearing the comment, became concerned and called for law enforcement assistance.
35. When Doe Deputies 1-10 and/or Doe Officers 1-10 arrived at his home, Plaintiff was in the process of consuming another drink. In the midst of taking the drink, Plaintiff saw, out of his peripheral vision, a Doe Deputy or Doe Officer lunging towards him. In response, Plaintiff raised his hands in front of his face to protect himself from the officer.
36. Upon information and belief, when Plaintiff raised his hands out of protection, the Doe Deputy or Doe Officer stated: "Nobody lays a hand on me."
37. Upon information and belief, the Doe Deputy or Doe Officer, without warrant, probable cause, or an exigent circumstance, threw Plaintiff to the ground between a dresser and another piece of furniture, pinning Plaintiff's head to the ground. The Doe Deputy or Doe Officer then proceeded to place Plaintiff under arrest.

38. The Doe Deputies and Doe Officers did not provide Plaintiff with any sort of warning, nor did they give reason for the sudden tackling and arrest.

39. All Doe Deputies and Doe Officers observed the incident and the conduct of the arresting Doe Deputy or Doe Officer (hereinafter "arresting officer") ; however, no one intervened. Additionally, upon information and belief, Sheriff Brown and/or Chief Whisnant had arrived at the scene and did not intervene.

40. While Plaintiff was handcuffed, with his arms behind his back, the arresting officer attempted to jerk Plaintiff up from the ground by his arms.

41. Upon information and belief, Plaintiff did not physically resist in a manner to authorize physical harm towards him.

42. After the arresting officer jerked Plaintiff off the ground, he began to walk Plaintiff toward the police vehicle. During this process, the arresting officer roughly and aggressively brought Plaintiff down a set of stairs, causing Plaintiff to further sustain injuries and broken bones.

43. The remaining Doe Deputies and Doe Officers did not provide or call for medical assistance, even though Plaintiff sustained several broken bones, among other injuries, during this attack. Furthermore, when Plaintiff's wife contacted law enforcement for assistance, she made it known prior to their arrival that Plaintiff had suicidal ideations. Despite having knowledge that Plaintiff lacked the ability to cause physical harm because he was elderly, under the influence, and in a fragile state of mind, Doe Deputies and Doe Officers chose to use excessive force upon Plaintiff's person.

44. As a direct and proximate result of Doe Deputies and Doe Officers malicious, intentional, and willful actions, Plaintiff has suffered severe physical injuries for which he has received

and is continuing to receive medical attention. Plaintiff's physical injuries include a broken collar bone, broken back bone, broken tail bone, broken left hip, collapsed shoulder, and injuries to his neck and throat.

45. As a result of his severe injuries, Plaintiff has incurred medical and other expenses, lost wages, and other financial losses.

46. All actions of the Doe Deputies and Doe Officers were carried out in their capacities as law enforcement officers of and pursuant to the policies and practices of Sheriff Brown, Chief Whisnant, and the City of Hickory.

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATIONS OF 42 U.S.C. § 1983**
(Against All Defendants)

47. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

48. The Doe Deputies and Doe Officers are not entitled to the benefit of qualified immunity as public officials because they violated Plaintiff's clearly established statutory or constitutional rights of which a reasonable officer would have known.

49. Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against the Doe Deputies and Doe Officers for violation of his constitutional rights under color of law.

50. The Doe Deputies and Doe Officers violated Plaintiff's constitutional rights while they were acting within the scope of their employment as duly sworn law enforcement officers of the Catawba County Sheriff's Department and Hickory Police Department.

Accordingly, Sheriff Brown and Chief Whisnant are vicariously liable for the Doe Deputies and Doe Officers' violations of Plaintiff's constitutional rights as set forth in this Action.

### A. VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES

51. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

52. Plaintiff was arrested and his person seized by the individual Doe Deputies and Doe Officers named herein while the Doe Deputies and Doe Officers were acting under color of law, without necessary probable cause or reasonable suspicion, in violation of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States to be free from unreasonable seizures.

53. The Doe Deputies and Doe Officers assaulted, battered, and seized Plaintiff's person without probable cause or reason to believe that any contraband, dangerous materials, incriminating objects, or weapons would be found, in violation of the Fourth and Fourteenth Amendments.

54. Because of the Doe Deputies and Doe Officers' actions, Plaintiff was falsely arrested and imprisoned in violation of his Fourth and Fourteenth Amendment rights.

### B. EXCESSIVE FORCE

55. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

56. The Doe Deputies and Doe Officers applied unconstitutionally excessive, unnecessary, and unreasonable force in contravention of Plaintiff's constitutional rights. The force applied by the Doe Deputies and Doe Officers was excessive and unreasonable for the following reasons:

a. The Doe Deputies and Doe Officers had no lawful justification for seizing or exerting physical force unto Plaintiff's person because the Doe Deputies and Doe Officers had no probable cause or reasonable suspicion to believe that Plaintiff had committed or was in the process of committing a crime, and there were no exigent circumstances present that might otherwise justify a seizure of Plaintiff's person;
b. Plaintiff did not pose an immediate threat to the Doe Deputies and Doe Officers because he was unarmed and outnumbered by the Doe Deputies and Doe Officers;
c. After the arresting officer initiated the tackling of Plaintiff's person, Plaintiff still did not pose such an immediate threat to the Doe Deputies and Doe Officers to justify their battering of Plaintiff's person because Plaintiff was in a prone position on the ground, handcuffed, and outnumbered by the Doe Deputies and Doe Officers;
d. Plaintiff did not physically resist arrest prior to the physical aggression exhibited by all Defendants, nor could he have attempted to evade arrest after being attacked because he had sustained several broken bones that hindered Plaintiff's ability to move or walk comfortably.
e. Plaintiff was 64 years old and under the influence of alcohol, which hindered his ability to physically harm the Doe Deputies or Doe Officers.

57. North Carolina courts "have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity. *Jones v. Buchanan*, 325 F.3d 520, 532 (4th Cir. 2003). For example, in *Jones*, the court held that an officer was not entitled to qualified immunity as a matter of law when he battered a Plaintiff who was

drunk and only yelling obscenities, was unarmed, was not suspected of any crime at the time the officer initiated the force, and, as a result of the officer's use of force, sustained bruising on his rib and lacerations on his lips and nose. *Id*. at 535-36. Consequently, reasonable officers in the position of the Doe Deputies and Doe Officers would or should have known that their actions violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure and excessive force.

**C. FAILURE TO INTERVENE**

58. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

59. All of the Doe Deputies and Doe Officers had a constitutional duty to uphold the constitutional rights of Plaintiff and protect him from application of unreasonable, unnecessary, and excessive force.

60. Once the arresting officer initiated the tackling of Plaintiff to the ground, Doe Deputies and Doe Officers had reason to know that Plaintiff was being illegally arrested, and that excessive, unnecessary, unreasonable force was being applied to Plaintiff's person.

61. The Doe Deputies and Doe Officers had reason to know that Plaintiff's constitutional rights secured under the Fourth and Fourteenth Amendments to the Constitution of the United States were being violated.

62. Doe Deputies and Doe Officers had reasonable, repeated, and realistic opportunities to intervene and prevent the harm and deprivation of Plaintiff's rights, including, but not limited to deescalating the situation both before and when the arresting officer aggressively tackled Plaintiff, intervening when the arresting officer began handcuffing Plaintiff, and refusing to further violate Plaintiff's rights. Instead, Doe Deputies and Doe Officers stood

by while the arresting officer initiated the rights violation and chose to further deprive Plaintiff's constitutional rights by battering Plaintiff after the unlawful arrest and dragging Plaintiff to the Police vehicle.

**D. ACTS OF MALICE**

63. All of the foregoing paragraphs are incorporated herein by this reference as if fully set forth.

64. The arresting officers and deputies actions in tackling Plaintiff to the ground, unlawfully seizing Plaintiff, failing to intervene, and repeatedly assaulting and battering Plaintiff constituted willful and wanton conduct that was undertaken with malice.

65. The Doe Deputies and Doe Officers knew or should have known that their conduct as alleged above would deprive Plaintiff of his constitutional rights, bodily integrity, and personal security. By initiating and continuing to perform the acts as alleged above with such knowledge, the Doe Deputies and Doe Officers acted willfully, wantonly, maliciously, and with such reckless disregard for the consequences as to demonstrate a conscious and deliberate indifference Plaintiff's rights, health, safety, and welfare.

**E. DAMAGES**

66. As a direct and proximate result of the Doe Deputies and Doe Officers' omissions and actions as alleged above, Plaintiff suffered damages, including but not limited to, physical pain and suffering; emotional suffering; and severe physical injuries that required Plaintiff to seek past, present, and future medical attention.

67. Plaintiff has suffered damages in an amount exceeding $80,000.00 to be determined at a trial of this matter.

68. Plaintiff is entitled to recover reasonable attorney fees as a result of the Doe Deputies and Doe Officers' violations of Plaintiff's rights guaranteed by the Constitution of the United States and 42 U.S.C. § 1983, as set out in 42 U.S.C. § § 1983 and 1988.

69. The acts and omissions of the individual Doe Deputies and Doe Officers were willful, wanton, and malicious. Consequently, Plaintiff is entitled to recover punitive damages from the individual Doe Deputies and Doe Officers, jointly and severally, in an amount to be determined at a trial of this matter, pursuant to N.C. Gen. Stat. § 1D et seq.

70. Plaintiff is entitled to recover punitive damages from the individually named Doe Deputies and Doe Officers pursuant to 42 U.S.C. § 1983 because the Doe Deputies and Doe Officers' conduct was malicious and/or involved reckless or callous indifference to Plaintiff's federally protected rights.

71. All actions of Doe Deputies were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Sheriff Brown and John Doe Corporation, as surety on the official bond of Sheriff Brown, through the theory of *Monell* and the doctrine of *respondeat superior*. Consequently, Sheriff Brown and John Doe Corporation, as surety, are liable for damages suffered and punitive damages in an amount to be determined at trial.

72. All actions of Doe Officers were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Chief Whisnant and the City of Hickory, through the theory of *Monell* and the doctrine of *respondeat superior*. Consequently, Chief Whisnant and the City of Hickory, are liable for damages suffered and punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**ASSAULT AND BATTERY**
(Against All Defendants)

73. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

74. The Doe Deputies and Doe Officers intentionally caused Plaintiff to reasonably apprehend harmful or offensive contact both when they approached Plaintiff in an aggressive manner and when the arresting officer escalated the situation by initiating the tackle.

75. Without consent or privilege, the Doe Deputies and Doe Officers caused Plaintiff to reasonably believe that he would immediately suffer battery and that the Doe Deputies and Doe Officers possessed the apparent ability to harm Plaintiff due to their angry dispositions combined with the facts that the Doe Deputies and Doe Officers outnumbered Plaintiff and had the necessary physical abilities to be employed as law enforcement officers.

76. The arresting officer committed the acts of harmful or offensive touching on the Plaintiff's person when he, without the necessary probable cause or reasonable suspicion, initiated an arrest of Plaintiff's person by intentionally tackling Plaintiff and throwing him to the ground. Discovery will reveal further information concerning the intentional, wrongful conduct of the law enforcement officer.

77. The arresting officer committed the acts of harmful or offensive touching when he intentionally pinned Plaintiff's head to the ground after Plaintiff was arrested. The arresting officer continued to commit the acts of harmful or offensive touching when he jerked Plaintiff off the ground and brought him to the police vehicle, in the process causing several additional injuries and broken bones.

78. The arresting officers' actions in causing Plaintiff to apprehend immediate battery, tackling Plaintiff to the ground, unlawfully seizing Plaintiff, and repeatedly battering him after he was immobilized constituted willful and wanton conduct that was undertaken with malice.

79. The Doe Deputies and Doe Officers knew or should have known that the conduct as alleged above would not only deprive Plaintiff of his constitutional rights, bodily integrity, and personal security, but also physically injure Plaintiff unnecessarily. Despite such knowledge, by initiating, continuing to perform the acts as alleged above, and/or refusing to intervene, the Doe Deputies and Doe Officers acted willfully, wantonly, maliciously, and with such reckless disregard for the consequences as to demonstrate a conscious and deliberate indifference to Plaintiff's rights, health, safety, and welfare.

80. As a direct and proximate result of the conduct alleged, Plaintiff sustained injuries as set forth hereinafter, including physical pain and suffering; emotional suffering; and severe physical injuries that required Plaintiff to seek past, present, and future medical attention and resulted in a loss of Plaintiff's wages.

81. All actions of Doe Deputies were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Sheriff Brown.

82. All actions of Doe Officers were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Chief Whisnant and the City of Hickory.

83. Plaintiff has suffered damages in an amount exceeding $80,000.00 to be determined at a trial of this matter.

84. Plaintiff is entitled to an additional award of punitive damages for Doe Deputies and Doe Officers' showing of actual malice towards him in an amount to be set at trial.

## THIRD CAUSE OF ACTION
## FALSE ARREST AND ILLEGAL IMPRISONMENT
(Against All Defendants)

85. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

86. Plaintiff was restrained against his will when the arresting officer, intentionally and illegally, arrested Plaintiff by tackling Plaintiff to the ground, moving Plaintiff into a prone position, and handcuffing Plaintiff.

87. The Doe Deputies and Doe Officers continued to intentionally and illegally restrain Plaintiff against his will by placing him in the police vehicle and driving him to the hospital.

88. The Doe deputies and Doe Officers intentionally deprived Plaintiff of his liberty without his consent and against his will.

89. The Doe Deputies and Doe Officers knew or should have known that the conduct as alleged above would not only deprive Plaintiff of his constitutional rights, bodily integrity, and personal security, but also physically injure Plaintiff unnecessarily. Despite such knowledge, by initiating, continuing to perform the acts as alleged above, and/or refusing to intervene, the Doe Deputies and Doe Officers acted willfully, wantonly, maliciously, and with such reckless disregard for the consequences as to demonstrate a conscious and deliberate indifference to Plaintiff's rights, health, safety, and welfare.

90. As a direct and proximate result of the conduct alleged, Plaintiff sustained injuries as set forth hereinafter, including physical pain and suffering; emotional suffering; and severe physical injuries that required Plaintiff to seek past, present, and future medical attention and resulted in a loss of Plaintiff's wages.

91. All actions of Doe Deputies were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Sheriff Brown.

92. All actions of Doe Officers were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Chief Whisnant and the City of Hickory.

93. Plaintiff has suffered damages in an amount exceeding $80,000.00 to be determined at a trial of this matter.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Against All Defendants)

94. Plaintiff incorporates herein by reference all allegations in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

95. The Doe Deputies and Doe Officers intentionally caused Plaintiff's emotional distress, and/or acted in reckless disregard of the likelihood of causing Plaintiff's emotional distress in committing the alleged acts when they effectuated an unreasonable seizure, and repeatedly assaulted and battered Plaintiff.

96. The Doe Deputies and Doe Officers' actions constituted outrageous conduct insofar as they took advantage of their lawful authority to exert excessive physical force unto Plaintiff's person, effectuate an unlawful arrest, and deprive Plaintiff of his rights; bodily integrity; and personal security.

97. At all times relevant to this action, the Doe Deputies were acting within the course and scope of their agency and employment by the Catawba County Sheriff's Department. The actions of the Doe Deputies are thus imputed to Sheriff Brown.

98. At all times relevant to this action, the Doe Officers were acting within the course and scope of their agency and employment by the City of Hickory. The actions of the Doe Officers are thus imputed to Chief Whisnant.

99. As a direct and proximate result of the aforesaid intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer severe and grievous mental anguish, emotional and physical distress, and other damages, exclusive of interest and costs, in an amount exceeding $80,000.00. Plaintiff is therefore entitled to an additional award of punitive damages in an amount to be determined at a trial of this matter.

100. Plaintiff has also incurred and continues to incur medical expenses and other damages in an amount to be determined at a trial of this matter.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

101. Plaintiff incorporates herein by reference all allegations in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

102. Under North Carolina state law, a cause of action for negligent infliction of emotional distress is established when the defendant negligently engaged in conduct in which it was reasonably foreseeable that such conduct would cause the Plaintiff severe emotional distress, and the conduct did in fact cause Plaintiff’s severe emotional distress. *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 435 S.E.2d 320 (1993) citing *Johnson v. Ruark Obstetrics and Gynecology Assocs.*, 327 N.C. 283, 395 S.E.2d 85 (1990). To the most casual observer, the conduct of the Doe Deputies and Doe

Officers could reasonably be foreseen to have caused Plaintiff's severe emotional distress, and they in fact caused such distress.

103. The Doe Deputies and Doe Officers had an obligation and legal duty to use reasonable care to avoid causing emotional distress to Plaintiff.

104. The Doe Deputies and Doe Officers breached that duty in that they, acting collectively, engaged in negligent conduct by subjecting Plaintiff to an unreasonable seizure. The Doe Deputies and Doe Officers should have known that their actions violated Plaintiff's Fourth Amendment right both in effectuating an arrest without lawful justification, exerting unreasonable physical force unto Plaintiff's person and/or failing to intervene.

105. The Doe Deputies and Doe Officers otherwise engaged in negligent conduct as alleged herein in connection with Counts I, II, III, and IV as stated above.

106. It should have been reasonably foreseeable that the negligent conduct of the Doe Deputies and Doe Officers would cause Plaintiff severe emotional distress and mental anguish.

107. The negligent conduct of the Doe Deputies and Doe Officers did in fact cause Plaintiff severe emotional distress and mental anguish.

108. As a result of his severe emotional distress and mental anguish, Plaintiff has suffered damages.

109. As a direct and proximate result of the above-described negligent infliction of emotional distress, Plaintiff is entitled to recover from Doe Deputies and Doe Officers compensatory damages exceeding $80,000.00 for the personal injuries caused by the severe emotional distress.

110. All actions of Doe Deputies were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Sheriff Brown.

111. All actions of Doe Officers were carried out in their capacities as law enforcement officers of and pursuant to policies and practices of Chief Whisnant and the City of Hickory.

112. Plaintiff has suffered damages in an amount exceeding $80,000.00 to be determined at a trial of this matter.

**SIXTH CAUSE OF ACTION**
**NEGLIGENT HIRING, TRAINING, AND/OR SUPERVISION**
(As Against Sheriff Brown and Chief Whisnant in their Official Capacity)

113. Plaintiff incorporates herein by reference all allegations contained in the above paragraphs and throughout this entire Complaint as though the same were fully set forth herein at length.

114. Sheriff Brown, as the chief-law enforcement officer of Catawba County, has a duty to exercise reasonable care in the hiring, training, retention, and supervision of his officers and agents employed to work with the Sheriff's Department.

115. Sheriff Brown breached his duty by the following:

a. Failing to reject Doe Deputies as Catawba County law enforcement officers prior to hiring them;

b. Failing to take appropriate measures to properly train Doe Deputies regarding unreasonable seizures and excessive force;

c. Failing to take appropriate measures to supervise Doe Deputies;

d. Breached his duty in other ways to be determined during discovery.

116. Chief Whisnant, as the former chief-law enforcement officer of the City of Hickory, had a duty to exercise reasonable care in the hiring, training, retention, and supervision of his officers and agents employed to work with the Hickory Police Department.

117. Chief Whisnant breached his duty by the following:

a. Failing to reject Doe Officers as Hickory law enforcement officers prior to hiring them;

b. Failing to take appropriate measures to properly train Doe Officers regarding unreasonable seizures and excessive force;

c. Failing to take appropriate measures to supervise Doe Officers;

d. Breached his duty in other ways to be determined during discovery.

118. As a direct and proximate result of Sheriff Brown, the City of Hickory and Chief Whisnant's breach of duty, Plaintiff suffered damages in an amount exceeding $80,000.00 to be determined at a trial of this matter.

**DAMAGES**

119. As a result of aforementioned conduct, Plaintiff Jonathan Greaves has sustained the following damages and injuries: deprivation and violation of his constitutional, common law, and state rights; severe physical injuries; emotional and mental injuries; violation of his bodily integrity; compensatory damages; punitive damages; and all other damages set forth above.

WHEREFORE, Plaintiff, Jonathan Greaves, respectfully prays the Court as follows:

1. That the Court empanel a jury to hear his cause;
2. That the Court awards Plaintiff compensatory damages, punitive damages, economic damages, against Defendants in such sums as Plaintiff demonstrates by the evidence;

3. That the Court awards Plaintiff reasonable attorneys' fees, costs, and expenses incurred in this action; and

4. Other and further relief as the facts warrant and justice requires.

*(The rest of this page was intentionally left blank)*

This the 9th day of May, 2023.


/s/ M. Anthony Burts II
M. Anthony Burts II
Attorney for Plaintiff
2520 Sardis Road North, Suite 234
Charlotte, NC 28227
T: (704) 751-0455
F: (704) 413-3882
anthony@burtslaw.com
N.C. Bar No. 49878